# Jewel *against* Howe.

The notice required by the act of 1772 to be given to a justice previously to a suit against him, must set forth clearly and explicitly the cause of action on account of which the plaintiff claims amends.

It is not necessary that a debtor should have absconded *for the space of six days* from his place of usual abode with a design to defraud his creditors, in order to authorize the granting of a domestic attachment against him.

The oath to ground a domestic attachment should pursue the terms of the act of assembly; to use in it the alternative, that the debtor " has absconded from the county, *or* does evade civil process," renders it defective.

WRIT of error to the court of common pleas of *Venango* county.

This was an action of debt brought by the plaintiff in error, in the court below, against the defendant, a justice of the peace of Venango county, to recover from him the penalty of one hundred dollars for granting against him and Jonathan Jewel jointly, at the suit of Edward Pearce, a writ of domestic attachment contrary to the acts of assembly in such case made and provided.

By the first section of the act of the 22d of August 1752, entitled an " act for regulating attachments not exceeding five pounds," it is enacted among other things, that "if any attachment be granted out otherwise, or contrary to the true intent and meaning thereof, the justice of the peace so granting the same, shall, for every such offence, forfeit the sum of five pounds, for the use of him or her that shall first sue for the same." And afterwards by another act of the 4th of December 1807, this penalty was extended to 100 dollars. The plaintiff, on the trial of the cause, read in evidence a notice, the delivery of which was proved to have been made to the defendant upwards of thirty days before the impetration of the writ commencing this action. The notice was in the following words.

" To John F. Howe, Esq., justice of the peace in and for Venango county.

" Sir,—I hereby give you notice, agreeably to the provisions of the act of assembly, that I shall commence a suit against you, on or immediately after the expiration of thirty days from this date, unless sufficient and adequate amends are tendered to me, or to my attorney, within the said period. The cause of action which I claim against you is as follows. On the 22d day of October instant, you, as a justice of the peace for said county, issued a domestic attachment at the instance of one Edward Pearce against me (together with one Jonathan Jewel), illegally and contrary to the provisions, rules, regulations and restrictions of the acts of assembly of Pennsylvania, in such cases made and provided. An act of assembly passed the 22d day of August A. D. 1752, entitled, " an act for

[Jewel v. Howe.]

regulating attachments not exceeding five pounds," in the first section thereof, provides, among other things, that "before the granting any such attachment, the person or persons' requesting the same, or some credible person or persons for him or them, shall, upon oath or affirmation, declare that the defendant in such attachment is indebted to the plaintiff therein named, in a sum not exceeding [five pounds], and that the defendant is and has been absconded from the place of his usual abode for the space of six days, with design to defraud his creditors as is believed, and that the defendant has not left a clear fee simple estate in lands or tenements, within this province, sufficient to pay his debts, so far as the plaintiff or deponent knows or believes, which oath or affirmation the justice of the peace that grants such writ is hereby empowered and required to administer; and if such attachment be granted out otherwise, or contrary to the true intent and meaning hereof, the justice of the peace so granting the same shall, for every such offence, forfeit the sum of [five pounds], for the use of him or her that will sue for the same." Another act of the general assembly of Pennsylvania, passed the 4th day of December A. D. 1807, entitled "an act to alter and amend the several laws of this commonwealth relative to domestic attachments," in the fifteenth section thereof, provides, among other things, "that the penalty on the justice mentioned in the first section of said act [the act of the 22d of August A. D. 1752, above referred to] be extended to 100 dollars." My cause of action, therefore, against you is, that the aforesaid attachment was issued by you as a justice of the peace against me (together with said Jonathan Jewel) contrary to the spirit and meaning of said acts of assembly; and I shall therefore claim the amount of the penalty provided therein, 100 dollars, in the suit which I shall institute against you.

"Very respectfully,
"Yours, &c.,
"MOSES JEWELL."

Indorsed—"John Galbraith, attorney at law in the borough of Franklin, Venango county, Pennsylvania, is my attorney."

The record of the domestic attachment, and the proceedings thereon, were also given in evidence. The oath administered to the plaintiff in the attachment, and reduced to writing by the defendant in this case before granting it, was the only thing objected to on the trial of this case as being irregular. On the insufficiency of it the. plaintiff maintained this action. The oath, as reduced to writing, was in the following words: .

"Edward Pearce, yeoman, upon his solemn oath doth declare that Moses Jewel and Jonathan Jewel of said county, yeomen, are indebted to him in a sum not exceeding 100 dollars, and that they have absconded from the county, or do evade civil process, with design to defraud their creditors, as is believed; and that they have not left a clear fee simple estate in land and tenements within this state suffi-

III.—T

[Jewel v. Howe.]

cient to pay their debts as far as the said Edward Pearce knows or believes.

" Signed—EDWARD PEARCE.

" Sworn and subscribed October 22, 1831.

" JOHN W. HOWE."

Two questions were raised. First, whether any cause of action was contained in the notice: and second, whether or not the oath, made by the plaintiff in the domestic attachment, before granting it, was defective in not stating that the defendants therein named had absconded *for the space of six days.* On both of these questions the court below charged the jury in favour of the defendant, to which the counsel for the plaintiff excepted, and have assigned the same for error.

*Galbraith,* for plaintiff in error.

The fifteenth section of the act of 1807 makes no alteration in the act of 1752, except in extending the jurisdiction and enlarging the penalty. The latter act is, in all other respects, in full force. The notice sets out the section of the act of 1752, for the violation of which the suit was brought, and warns the defendant that the attachment was issued contrary to the provisions of that section. The notice was, therefore, sufficiently specific. It is not necessary to specify the precise manner in which the act was violated. The only portion of which it is requisite to give notice, is the oath which the act prescribes to be taken. It was not requisite that we should set out the particular defects in the oath. The justice could labour under no mistake as to our cause of action. It was a substantial notice, and was in ample compliance with the act. Miller *v.* Smith, 12 *Serg. & Rawle* 145; Coates *v.* Wallace, 17 *Serg. & Rawle* 75. If the act of 1807 extend to justices of the peace, still the oath was not sufficient. But we maintain that the provisions of the act of 1752 are still in force, and must be complied with. The oath, however, is defective under any act of assembly both in terms and meaning.

*Thompson* and *Pearson,* for defendants in error.

The notice is defective in not referring to the oath, and in not specifying what provision of the act was violated. Little *v.* Toland, 6 *Binn.* 87; Mitchell *v.* Cowgill, 4 *Binn.* 20; Jones *v.* Hughes et al., 5 *Serg. & Rawle* 299. In each of the cases referred to on the other side, the notice was quite specific. In proceedings of this nature against justices of the peace, it is sound policy that the courts should hold the party, bringing suit, strictly to the law.

The act of 1807 creates a new system; and in the fifteenth section embraces justices. In this case the declaration was a copy of the notice. The point on which the plaintiff rested his cause was not set out either in the declaration or the notice, but for the first time in the concluding argument to the court and jury. The affidavit was in compliance with the act of 1807. But suppose it was not, it

is a matter of indifference, as the notice refers to the act of 1752 as the one whose provisions were violated. By the act of 1809, the proviso to the first section of the act of 1807 is repealed. All the other provisions of the act of 1752 must be complied with, except that relating to the oath. If the notice did not refer to the right act of assembly, we were not bound to regard it.

The opinion of the Court was delivered by

KENNEDY, J.—As to the first question. The act of the 21st of March 1772, which prohibits the bringing of a suit against a justice of the peace for any thing done by him in the execution of his office, until notice in writing of such intended suit shall have been delivered to him or left at his usual place of abode by the party, his attorney or agent, thirty days before suing out of the writ, requires that " in the notice shall be *clearly* and explicitly contained the cause of action which the said party hath, or claimed to have against such justice of the peace." Hence it is evident that the cause of action, whatever it may be, must be clearly and explicitly set out in the notice; or otherwise it is not such as the act of assembly expressly requires. It is manifest from all the provisions contained in the act that it was intended for the protection of justices of the peace in the execution of their offices, and ought therefore to be liberally construed with a view to promote that end. Mitchell *v.* Cowgill, 4 *Binn.* 24. But it seems to me, that upon no construction of it can the notice in this case be held sufficient, because it contains no cause of action whatever. It is not even possible from its terms to conjecture what particular act it was that the defendant had wished done, or omitted to do, in granting the attachment, that the plaintiff intended to make the *gravamen* of his suit. In the first part of his notice the plaintiff says, " The cause of action which I claim against you, is as follows. On the 22d day of October instant, you, as justice of the peace for said county, issued a domestic attachment at the instance of Edward Pearce against me, illegally and contrary to the provisions, rules, regulations and restrictions of the acts of general assembly of Pennsylvania, in such cases made and provided." And then, after reciting the greater part of the first section of the act of 1752, he in conclusion of his notice again repeats, " my cause of action therefore against you is, that the aforesaid attachment was issued by you as a justice of the peace against me, contrary to the spirit and intent of said acts of assembly."

These are the only allegations contained in the notice which purport to state or specify in any way what the cause of action is. They are nothing more than that the plaintiff's cause of action against the defendant is for having granted the writ of domestic attachment against him contrary to the spirit and intent of the act of assembly. And after reading this notice, the mind, instead of being satisfied, has the question necessarily forced upon it—to which it is utterly impossible to find an answer in the notice—In what particular was the

[Jewel v. Howe.]

attachment granted contrary to the acts of assembly? Surely the notice ought to have been such as would have prevented the question from arising. But as it is, it is no better than if the plaintiff had said in it, without more, " Unless you tender me sufficient amends, I will sue you after thirty days for granting a domestic attachment against me, at the suit of Edward Pearce, contrary to the acts of assembly." It was contended that the recital of the first section of the act of 1752 supplied what was wanting to make the notice perfect, but I am not satisfied that this was not rather calculated to mislead than to inform the defendant correctly; for it will appear presently that so far as that section of the act of 1752 declares and points out the case and conditions in which a domestic attachment may be granted, it has been altered and repealed by the act of 1807. The notice, according to the very terms of the act itself, and I do not know that more forcible or less ambiguous could have been used, " ought clearly and explicitly to set forth the cause of action," that the justice may be fully apprised of the particular ground of the complaint, and consult with his counsel or friends so as to satisfy himself and know whether he, by his conduct, has done an injury to the plaintiff for which he is bound to tender amends. We think, therefore, that the court below were clearly right in holding the notice to be insufficient.

The second question. Although nothing appears either in the notice or the declaration to bring it up distinctly in this cause, yet it was raised by the counsel for the plaintiff in the argument of the cause before the court and jury. He contended there, and has done the same here, that because it did not appear from the face of the oath made by the plaintiff in the attachment before the defendant as a justice of the peace, previously to the latter, granting the writ, that the plaintiff had absconded from the place of his usual abode for the space of six days; that the plaintiff was therefore not the proper subject of such a writ, and that the defendant violated the act of assembly in this particular by granting the attachment, and thereby became liable to pay the penalty of 100 dollars. The decision of the question might be pretermitted after having decided the first in favour of the defendant; but as it has been argued, and the court below seemed to think it one of some difficulty, it may be proper to express our opinion upon it also.

By the first section of the act of the 22d of August 1752 it is enacted, as alleged by the plaintiff's counsel, that before granting the attachment the person requesting the same, or some other sensible person for him, shall, upon oath or affirmation, declare, that the defendant in such attachment is indebted; and that the defendant is and has been absconded from the place of his usual abode for the space of *six days*. But then by the first section of the act of the 4th of December 1807 it is enacted that " it shall, and may be lawful, for the respective courts of common pleas, on the oath or affirmation of any creditor, or any other credible person for him, of the truth of his

[Jewel v. Howe.]

debt, and that his debtor or debtors had absconded or departed from the place of his or their usual abode in this state, or remained absent from the state, or have confined him or themselves in his or their own house or houses, or concealed him or themselves elsewhere, with design, as is believed, to defraud his or their creditors, and that the said debtor has not left a clear real estate in fee simple, within the state, sufficient to pay his debts, so far as such deponent knows or believes, to issue writs of attachment against all the lands, tenements, goods and chattels of such person or persons so absconding, absenting, confining or concealing him or themselves." And again, by the fifteenth section of this same act, it is further enacted, " that the jurisdiction of the justices of the peace and aldermen shall be, and the same is hereby extended to all cases of attachment authorized by this act where the debt or demand of the plaintiff does not exceed 100 dollars." Now what are the cases of attachment authorized by this act ? They are clearly those specified in the first section of it, which has been repeated. First, where the debtor has absconded or departed from the place of his usual abode in the state, with a design, as is believed, to avoid his creditors : second, where he has remained absent from the state with a like design : third, where he has confined himself in his own house with a like design : fourth, where he has concealed himself elsewhere with a similar design. Now here are four cases provided for by the act of 1807 in which domestic attachments may be sued out, and the jurisdiction of justices of the peace is expressly extended to them. By the act of 1752 one case alone is provided for in which a writ of domestic attachment may be granted, and that case is altered by the act of 1807, by leaving out the words "for the space of six days," so that in no case is it necessary, since the act of 1807, that a debtor should have absconded for the space of six days from his place of usual abode with a design to defraud his creditors, in order to authorise the granting of a domestic attachment against him. The title of the act of 1807 indicated the intention of the legislature to make the alterations, as well as the body of it. The title of it is " an act to alter and amend the several laws of this commonwealth relative to domestic attachment," and the twentieth section of it expressly declares, "so much of any act of assembly as is thereby altered and supplied, to be thereby repealed." This construction is likewise fortified by the provision of the act of the 4th of April 1809, entitled " an act supplementary to the act of 1807." The legislature thinking, inasmuch as no express authority was given by the act of 1807 to justices of the peace to administer the oath required by the first section of that act, before granting the attachment, that there might be some difficulty or doubt in regard to it, or possibly knowing that some had previously occurred, and therefore to remove any thing of the kind in future, passed the act of 1809, by which it is declared, that the oath required by the first section of the said act of 1807 shall be administered either by the prothonotary of the court, or before a justice of the peace, as the case

may require : thus plainly declaring where the writ of domestic attachment is to be made out by the prothonotary of the court, he shall administer the oath ; but where it is required to be granted by a justice of the peace, then he shall administer the oath prescribed by the first section of the act of 1807. Hence the oath prescribed by the act of 1752 has not, since the passage of the act of 1807, been authorized to be administered in any case; and therefore the exception taken by the counsel of the plaintiff on the trial of the cause in the court below, to the oath administered by the defendant, before granting the attachment against the plaintiff, was most clearly not sustained. The court below therefore decided the second question rightly against the plaintiff.

I do not however wish to be understood as deciding that the oath brought in question in this case is free from exception, because I think otherwise. The averment contained in it is, " that they have absconded *from the county, or do evade civil process,* with design, &c." That is, they have done one of two things, but it *is not certain which.* If their place of usual abode had been within the county, upon that being shown to be the fact, *possibly* it might have aided, and made the oath sufficient to have brought the defendants in the attachment within the first case provided for by the act of 1807, had not the subsequent alternative averment been superadded. I think the oath or affirmation ought to show particularly in which of the cases provided for by the act of 1807 it is that the defendant has put himself. Besides there is also another objection to the latter averment in the alternative. It does not conform to the terms used in the act in designating any of the cases in which attachments may be sued out. It may be said, to be sure, that the debtor who conceals himself in his own house or elsewhere to defraud his creditors, being a case expressly provided for by the act, does thereby evade civil process if any be sued out against him. But suppose he appear openly and publicly, but by force repel every attempt made to serve civil process upon him; in doing so, may it not be said with the same propriety, that he evades civil process? Indeed I am rather inclined too to think, that the first averment is fatally defective in not stating that " they had absconded from the *place of their usual abode,* &c." instead of " *county.*" From the oath it cannot well be inferred or collected, that they had ever had a place of abode within the county. Their place of residence or usual abode may have been in another county, and if so, it would be difficult, I apprehend, to support the attachment. I would advise the words of the act to be adhered to in all cases, in order to avoid error, and possibly something still worse upon some occasions.

Judgment affirmed.